IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHARLES E. SPANGLER,

                Plaintiff,

  v.

DONNA PITTMAN, STACY ROSE,
RON CRAMER, JOEL BRETTINGEN,
PATRICIA SALIMES, MICHAEL KLOTZ,
and JOHN AND JANE DOES,

                Defendants.[1]

OPINION & ORDER

16-cv-312-jdp

---

Pro se plaintiff Charles E. Spangler is a Wisconsin prisoner now incarcerated at the Stanley Correctional Institution. He suffers from various physical and mental impairments, and an administrative law judge in his social security proceeding found him to be disabled. After his disability determination, he was incarcerated as a pretrial detainee at the Eau Claire County Jail, and the jail had a policy that locked detainees out of their cells twice a day and five days a week, with each lockout lasting for about four hours. Spangler's physical impairments caused him back pain when he stood for hours during the lockouts. He presented documents showing his disability and continually asked jail officials for accommodations, such as an extra mattress, a plastic chair, reduced lockout time, and exemptions from the lockouts. Most of his requests were denied, and he had to comply with the lockout policy despite his pain. He also asked for a doctor visit to seek help for his pain, but it took over a week for a doctor to see him despite his complaints of severe pain. He also asked for pain medicine, but the doctor did not give him medicine to alleviate his pain, stating that she did not have his

---

[1] I have updated the caption to reflect the parties' full names.

medical records, even though she had the documents from Spangler's disability proceeding. I allowed Spangler to proceed on Fourteenth Amendment claims against jail officials, a doctor, and a nurse at the jail.

Defendants move for summary judgment. Dkt. 68 and Dkt. 77. I will deny these motions because there are disputed issue of material fact regarding Spangler's claims that he was forced to stand for hours at a time despite his complaints of severe pain, and that he faced delays in being treated for his pain. I will also grant Spangler's motion for the court's assistance in recruiting him counsel.

UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

**A. Background**

Spangler was a pretrial detainee at the Eau Claire County Jail from March 19, 2010, to May 20, 2010. Defendant Ron Cramer was the sheriff of Eau Claire County. Defendants Joel Brettingen, Patricia Salimes, and Michael Klotz were jail officials who reviewed Spangler's institutional grievances. Defendant Donna Pittman was a doctor at the jail. Defendant Stacy Rose was a nurse.

Spangler suffered from various maladies, including anxiety, obesity, and osteoarthrosis, along with depressive disorder. Dkt. 94-3, at 3–4; *accord* Dkt. 80-1, at 13. Osteoarthrosis caused him chronic back pain, and he had been adjudicated to be disabled under the Social Security Act. An administrative law judge found that Spangler could stand for only 20 to 30 minutes at a time, and Spangler presented his social security documents, including the ALJ's decision,

2

when he arrived at the Eau Claire County Jail. He needed to use a cane to stand or walk, and jail officials allowed him to use a metal cane during his stay at the jail.

**B. Lockout policy**

The Eau Claire County Jail had a procedure of locking detainees out of their cells. The parties have not produced a comprehensive document that shows all of the details of the lockout procedure, but Spangler presents a document titled "Eau Claire County Jail Field Training & Evaluation Program" that shows some key provisions of the lockout policy. Dkt. 1-1, at 24–25.

The policy locked detainees out of their cells twice a day from Monday through Friday. The morning lockout was from 8 a.m. to noon; the afternoon lockout was after the afternoon roll call, around 1:30 p.m., "until approximately dinner." Dkt. 74, ¶ 30; *see also* Dkt. 1-1, at 24. Each lockout lasted about four hours. The lockout policy did not apply on weekends and holidays. While locked out of their cells, the detainees stayed in the dayroom.

Supervisors at the jail could excuse detainees from the lockouts. If a detainee claimed a medical issue as an excuse, a supervisor would contact the jail's medical department for a medical opinion and then the supervisor could provide any accommodations that had been deemed necessary. Some housing units at the jail were excused from the lockouts.

In Spangler's case, jail officials excused him from the lockouts for some portions of his detainment at the Eau Claire County Jail. For his first four days at the jail, from March 19 to March 23, he stayed in a housing unit where he was excused from the lockouts while his security classification was pending. After he was classified, he moved to 89-G-15L, another housing unit where he was made to comply with the lockout policy, and he stayed there from March 23 to March 25.

On March 23 and 24, he submitted health-care request forms, explaining that he could not be locked out for hours at a time. He also filed an institutional grievance on March 24, explaining that if he continued to be locked out, he would need emergency medical treatment. Dkt. 94-1, at 4. Klotz reviewed Spangler's March 24 grievance, and after speaking with a nurse, authorized Spangler's transfer to the Huber dorm, a housing unit where detainees were not subject to lockouts. Spangler stayed in the Huber Dorm from March 25 to April 16.

On April 16, Spangler was moved from the Huber dorm to Pod B, a housing unit where he was again subjected to lockouts. This move was caused by an incident involving contraband. A detainee in the Huber dorm was caught with pornography and some unidentified contraband, and jail officials moved all detainees out of the Huber dorm. Spangler states in his declaration that contraband was found in another detainee's locker, Dkt. 94, ¶ 17, and defendants do not deny that the pornography and the contraband belonged to someone other than Spangler.

While at Pod B, he was excused from the afternoon lockouts from April 16 until he left the Eau Claire County Jail on May 20, except for April 24, when he was locked out for both the morning and the afternoon for an unidentified reason. On May 20, he was transferred to the Dodge Correctional Institution.

Between April 16 and May 20, Spangler submitted numerous grievances and health-care request forms asking for accommodations. He asked for, among other things, a transfer back to the Huber dorm, a second mattress, a plastic chair, an exception from the lockouts, reduced lockout time, and access to his cell during the lockouts. Most of Spangler's requests were denied, except that he was excused from afternoon lockouts and got a second mattress. Spangler's grievances indicate that jail officials ostensibly deferred to unidentified medical

personnel on what accommodations were appropriate for Spangler, but Pittman, the doctor, deferred the decision to determine the accommodations to jail officials.

**C. Medical care**

Eau Claire County had a contract with a private entity, Health Professionals, Ltd., now known as Correctional Healthcare (CHC). Under that contract, CHC employees provided health care to detainees at the Eau Claire County Jail. Pittman and Rose were both employees of CHC. Pittman was a physician; Rose was a nurse.

At the Eau Claire County Jail, a detainee who wanted medical treatment had to submit a health-care request form. The health-care request forms were screened by nurses, who scheduled on-site appointments. If a nurse determined that a detainee required emergency medical care, the nurse was to schedule an appointment with a doctor and the doctor visit would take place the same day of the detainees' request for treatment. The doctor would then examine the detainee and assess whether to call 911.

Spangler submitted health-care request forms on at least eight dates: March 20, March 23, March 24, April 7, April 13, April 30, May 2, and May 20. He requested, among other things, pain medicine, doctor visits for back pain, and the lockout accommodations that he requested in his grievances.

On March 31, Pittman saw Spangler and prescribed trazodone. Pittman and Rose contend that trazodone can treat chronic pain, but they do not dispute that trazadone failed to alleviate Spangler's pain. Spangler continued to report that he suffered from severe back pain in his institutional grievances, that he was being denied adequate medical treatment, that he would need emergency medical treatment if he were forced to continue to comply with the lockout policy, and that he needed different medicine. Pittman denied Spangler's request for

5

different medicine and noted that she would need to reevaluate Spangler once she received his medical records. The parties agree that Pittman had the ALJ's decision from Spangler's social security proceedings. The ALJ's decision shows the names of the medical professionals who examined Spangler and their medical findings. Spangler also complained in a grievance that the nursing staff did not even send a request for his medical records. Dkt. 94-1, at 12.

Pittman saw Spangler again on May 4, when she prescribed him amoxicillin, an antibiotic that treats infections and stomach ulcers. Although Spangler told her that he had back pain and muscle spasms, she told Spangler that she still had not gotten his medical records, and she did not prescribe him pain medicine. She instead recommended to jail staff that he be allowed a second mattress.

ANALYSIS

A. **Preliminary matters**

I begin with two preliminary matters. First, Pittman and Rose contend that they are entitled to summary judgment not only under Federal Rule of Civil Procedure 56 but also under Civil Local Rules 7 and 56. Dkt. 77, at 1. Our district has only five local rules, and none of them apply to the summary judgment motions here. I will stick to Federal Rule of Civil Procedure 56 in analyzing those motions.

Second, all defendants contend that Spangler's claims are time-barred. The statute of limitations for § 1983 civil rights claims taking place in Wisconsin is six years. *Weiss v. Spielvogel-Donalds*, No. 16-cv-219, 2017 WL 3726986, at *7 n.6 (E.D. Wis. Aug. 28, 2017) (citing *Gray v. Lacke*, 885 F.2d 399, 407 (7th Cir. 1989)). Pittman and Rose contend that, because Spangler's last request for medical attention was on May 10, 2010, his medical claims

accrued on that date. Dkt. 78, at 4. The rest of the defendants contend that the last contact they had with Spangler was on April 16, 2010, so his claims against them accrued on April 16, 2010. Spangler's claims did not accrue "as long as the defendants had the power to do something about his condition, which is to say until he left the jail." *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001). "[E]very day that the defendants had prolonged an inmate's agony by not treating his painful condition marked a fresh infliction of punishment." *Weiss v. Barribeau*, 853 F.3d 873, 874 (7th Cir. 2017) (internal citation and quotation marks omitted). Spangler was told to wait for his medical records before Pittman would treat his pain, but Pittman allegedly never got Spangler's medical records and did not treat his pain during his stay at the jail. Spangler was also subjected to the lockout policy until he left the jail on May 20, 2010. So his claims accrued on May 20, 2010, and his complaint is postmarked May 6, 2016, within the six-year limit. His claims are timely, so I will decide Spangler's claims on the merits.

**B. Spangler's claims**

Spangler is proceeding on six sets of claims: (1) a conditions-of-confinement claim against Cramer in his individual capacity; (2) a *Monell* claim against Cramer in his official capacity (effectively a claim against Eau Claire County) for establishing the lockout policy; (3) deliberate indifference claims against Doe defendants for enforcing the lockout policy; (4) deliberate indifference claims against Klotz, Salimes, Brettingen, Pittman, and Rose for failure to provide Spangler accommodations for his medical needs; (5) deliberate indifference claims against Pittman and Rose for delaying medical care; and (6) deliberate indifference claims against Pittman and Rose for failure to provide him with pain medicine. Dkt. 9, at 7–8

7

(screening order for original complaint) and Dkt. 42, at 5–6 (screening order for amended complaint). Defendants move for summary judgment on all of Spangler's claims.

A court must grant summary judgment when no genuine issue of a material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The court must view the evidence in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court's role at summary judgment is to decide "whether, based on the evidence of record, there is any material dispute of fact that requires a trial," not "to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *D.Z. v. Buell*, 796 F.3d 749, 756 (7th Cir. 2015) (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)).

1. **Conditions of confinement**

I screened Spangler's amended complaint and allowed him to proceed against Cramer in his individual capacity for creating conditions of confinement that caused unnecessary pain. I will deny defendants summary judgment on this claim.

The protection against inhumane conditions of confinement under the Eighth Amendment applies to pretrial detainees under the Fourteenth Amendment. *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012). To prevail on a conditions-of-confinement claim, a detainee must show: (1) the adverse condition is sufficiently serious; and (2) the defendant has been deliberately indifferent to that condition. *Id.* at 664–65. Here, the parties dispute both elements.

A reasonable jury could find that Spangler's conditions of confinement were sufficiently serious. The parties do not dispute that Spangler suffered a great deal of pain. And requiring a

man who is known to be disabled (Spangler walks with a cane) to endure severe back pain for hours at a time, five days a week, for months with only a few days of exception could be sufficiently serious.

Cramer contends Spangler's conditions of confinement were not sufficiently serious because: (1) the lockout policy had limited application because it was used from Monday to Friday; (2) the policy had exceptions that allowed inmates to be excused from the lockouts; and (3) the lockout policy served legitimate penological interests of encouraging interaction among prisoners and staff. These reasons do not preclude finding sufficiently serious conditions of confinement.

First, Spangler suffered pain despite the limited application of the lockout policy, and an inhumane condition need not last long to violate the Constitution. *See, e.g.*, *Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (concluding that an inmate's Eighth Amendment rights were violated in seven hours because of inhumane conditions of confinement that caused pain, humiliation, and deprivation of basic human necessity). Second, the exceptions to the policy did not help Spangler: Spangler continually requested to be excused from the lockouts, but he says that he was given the runaround by various decision-makers at the jail who deflected responsibilities to others. And even though he was excused on some days, he suffered pain on the days he was not excused. Third, even though the overall goal of the lockout policy could promote various penological objectives, a jury could still conclude that a policy obviously causing a particular prisoner severe pain violates that prisoner's constitutional rights. *See King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015) ("Courts give wardens substantial deference in pursuing [legitimate penological objectives], but that deference is not complete.").

As for the deliberate indifference element, I allowed Spangler to proceed against Cramer even though Spangler did not explicitly allege that Cramer knew about the problems caused by the lockout policy, because he had filed numerous grievances about his medical needs in connection with the lockout policy with remarkable persistence. Dkt. 42, at 5. Cramer states in his declaration that he "generally do[es] not review or approve the medical requests nor do I respond or investigate all complaints, grievances or appeals." Dkt. 72, ¶ 5. But Spangler states in his declaration that he filed a grievance "up the chain of command to defendant Cramer," but he never got a response from Cramer. Dkt. 94, ¶ 29. Cramer has also stated in another case that he sometimes reviews appeals and investigates complaints. *See Johnson v. Cramer*, No. 14-cv-1616, 2016 WL 3080816, at *2 (E.D. Wis. May 30, 2016) ("Cramer explains that, when deciding an appeal, he generally conducts an investigation, which may include a review of records and/or discussion with relevant personnel."). A reasonable jury could infer from the evidence here that Cramer knew about the problems caused by the lockout policy, but he did not respond to Spangler's grievance. I will deny summary judgment as to Spangler's conditions-of-confinement claim against Cramer in his individual capacity.

2. *Monell* **claim**

Spangler's claim against Cramer in his official capacity is a *Monell* claim against Eau Claire County based on a county policy. *See Lewis v. Clarke*, 137 S. Ct. 1285, 1290–91 (2017); *Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008). To challenge the constitutionality of a municipal policy, a plaintiff must show that (1) an express policy, a widespread practice, or a final policymaker's action (2) caused a constitutional violation. *Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012).

Here, the parties agree that the lockout policy is an express policy of Eau Claire County. Dkt. 1-1, at 24–25 and Dkt. 72, ¶ 3. And a reasonable jury could find that the lockout policy created conditions of confinement that caused Spangler severe pain.

Cramer contends that: (1) Spangler suffered no deprivation of a constitutionally protected right; (2) there is no causal nexus between his injury and the policy; (3) the policy was related to a penological interest; (4) there were exceptions available to the detainees; (5) the jail had medial services available; and (6) there is no evidence that official policymaker was aware of the policy's deficiencies. None of these arguments preclude finding that the policy was unconstitutional. I addressed the first four and the sixth arguments above. As for the fifth argument, I am not persuaded that infliction of pain could be excused by the provision of medical care after the infliction, and Cramer cites no authority on this point. *See* Dkt. 70, at 28. I will deny summary judgment as to Spangler's *Monell* claim.

### 3. Deliberate indifference to medical needs

The rest of Spangler's claims are variations on deliberate indifference medical claims. I allowed Spangler to proceed relying on *Burton v. Downey*, where the Court of Appeals for the Seventh Circuit applied the deliberate indifference standard of the Eighth Amendment to a pretrial detainee's Fourteenth Amendment claim. 805 F.3d 776, 784–86 (7th Cir. 2015); Dkt. 9, at 4. The Seventh Circuit has not yet held that the Fourteenth Amendment's objective unreasonableness standard applies to a pretrial detainee's medical care claim. So I will follow precedent and apply the deliberate indifference standard to Spangler's claims. *See Phillips v. Sheriff of Cook Cty.*, 828 F.3d 541, 554 n.31 (7th Cir. 2016) ("[T]he present case law holds that 'pretrial detainees . . . are entitled to the same basic protections under the Fourteenth Amendment's due process clause. Accordingly, we apply the same legal standards to deliberate

indifference claims brought under either the Eighth or Fourteenth Amendment.'" (quoting *Minix v. Canarecci*, 597 F.3d 824, 830 (7th Cir. 2010))).

To prevail, Spangler must show that his medical conditions were objectively serious and that defendants were deliberately indifferent to his medical needs. *Burton*, 805 F.3d at 784. As for each claim discussed below, defendants do not dispute that Spangler's chronic back pain caused by osteoarthrosis is objectively serious, so the question is whether each defendant was deliberately indifferent to his pain.

### a. Failure to accommodate

Spangler contends that Klotz, Salimes, Brettingen, Pittman, and Rose were deliberately indifferent to his medical needs by denying accommodations that he requested. He requested a full exemption from the lockouts, reduced lockout time, access to his cell during the lockouts, a second mattress, and a plastic chair in the dayroom. His request for exemption was denied for the most part, as recounted above. He got a second mattress, but the rest of his requests were denied.

I begin with Spangler's claims against the medical providers, Pittman and Rose. I summarized Spangler's claims against Pittman and Rose in the first screening order:

> To summarize: plaintiff may proceed with claims against Pittman and Rose *for their refusal to recommend the accommodations that plaintiff requested*, for their failure to promptly respond to plaintiff's requests for treatment, and for their failure to provide plaintiff with pain medication.

Dkt. 9, at 7–8 (emphasis added). Pittman and Rose have not briefed the issue on refusal to recommend the accommodations, except noting in one sentence that Pittman "did recommend that he be given an extra mattress." Dkt. 78, at 10. The argument is undeveloped and does not address their refusal to other accomodations, namely exempting Spangler from the lockouts. I

will deny summary judgment for Pittman and Rose as to Spangler's claims for refusal to recommend the requested accommodations.

As for the other defendants, Klotz, Salimes, and Brettingen reviewed and denied Spangler's grievances or appeals. Spangler asked these defendants for accommodations and informed them of his medical needs and his severe pain, but his requests were denied. Dkt. 94-1, at 5; Dkt. 94-1, at 12; Dkt. 94-1, at 13. Klotz, Salimes, and Brettingen contend that they were not deliberately indifferent because they relied on medical professionals' opinions in responding to Spangler's requests. Dkt. 70, at 19. Summary judgment is appropriate when a non-medical defendant has "investigated the situation, made sure that the medical staff was monitoring and addressing the problem, and reasonably deferred to the medical professionals' opinions." *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006).

I will grant defendants' motion for summary judgment regarding Salimes and Brettingen because their declarations make clear that they relied on medical professionals' opinions in making their rulings. But I will deny the motion as to Klotz, because it appears that he exercised his own judgment in deciding what accommodations to give Spangler:

> I became aware that Mr. Spangler had been transferred to B-block. I informed Sgt. Steinhorst that Mr. Spangler would be excused from the afternoon lock out while housed in B-Block. I believed that based on my conversation with the jail medical personnel, and as a precautionary measure, excusing Mr. Spangler from afternoon lock out would be appropriate until medical could fully evaluate his issues. Based on the information I received and reviewed, I did not believe that any other accommodation was necessary. Nor did I see any indication that Mr. Spangler was not receiving proper or necessary medical care.

Dkt. 71, ¶¶ 10–11. A reasonable jury could infer from this testimony that Klotz made his own independent decision about the accommodation rather than deferring to medical personnel's

statements, and that he knowingly subjected Spangler to painful conditions. So this claim will proceed to trial.

   b. **Delay in providing medical care**

I allowed Spangler to proceed against Pittman and Rose for delaying medical care for his pain. A plaintiff can prove deliberate indifference of a medical professional by showing an "inexplicable delay" in providing medical treatment. *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016) (en banc). What constitutes an inexplicable delay depends on the seriousness of the condition and the ease of providing treatment, and unexplained delays as brief as one day can constitute deliberate indifference. *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015); *see also Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996) (two-day delay that prolonged unnecessary pain raises question for jury.). That a plaintiff received "some" medical treatment does not preclude a deliberate indifference claim. *Petties*, 836 F.3d at 729.

Here, a reasonable jury could find that Pittman inexplicably delayed in treating Spangler's pain from March 24 to May 20, the date he left the jail. Spangler submitted the documents from his Social Security proceeding when he first arrived at the jail. Those documents included the ALJ's finding that Spangler had severe back pain and that he could stand for only 20 to 30 minutes at a time. Dkt. 94-3, at 3. Spangler states in his declaration that Pittman and Rose were given "Social Security determination paperwork," Dkt. 94, ¶ 40. On March 24, Spangler asked to see a doctor for his back pain and wrote, "If I continue being locked-out it is likely I will need to go to the emergency room. I have my medical report with me." Dkt. 94-1, at 3. Pittman saw him on a week later, on March 31, and prescribed him Trazadone, which did not help Spangler, as discussed below. From March 31 to May 20, Pittman did not treat Spangler, on the basis that she lacked Spangler's medical records.

14

Pittman does not explain why she needed Spangler's medical records. Nor does she explain what type of medical record she needed that was missing from Spangler's jail medical file. The ALJ's decision shows the names of the medical professionals who treated him, but Pittman did not try to contact any of them. Spangler even wrote in one of his grievances that the request for his medical record was not even sent as of May 11. Dkt. 94-1, at 12. And Pittman is a doctor who could examine Spangler and attempt to treat him. If she could not treat him herself, she could send him to an off-site hospital where he could have received treatment. A reasonable jury could conclude that the delay here violated the Fourteenth Amendment.

Rose contends that Spangler failed to show her involvement in delaying treatment. But Spangler's progress notes documenting his visits with Pittman show Pittman's and Rose's signatures. *See, e.g.*, Dkt. 94-1, at 14. And the responsibilities of nurses at CHC included coordinating medical services. Dkt. 81, ¶ 5 and Dkt. 94-5, at 1. These documents support an inference that Rose was responsible for arranging medical services by Pittman and that she was responsible for the delay in providing treatment. I will not grant summary judgment on this claim.

### c. Failure to provide pain medicine

Spangler contends that Pittman and Rose insisted on ineffective treatment and that he should have been given different medicine. He says both narcotics and non-narcotics were available options. Dkt. 94, ¶¶ 32–34. A medical professional's persistence with what is known to be ineffective course of treatment can show deliberate indifference. *Petties*, 836 F.3d at 729.

Pittman and Rose contend that Spangler was given trazodone for his pain on March 31, but it did not help Spangler. Even after taking trazodone, Spangler continued to suffer

15

severe pain, as shown by his grievance forms. On April 16, Spangler wrote in his grievance that he would end up in the emergency room because of his pain. Dkt. 94-1, at 5. On April 30, Spangler wrote in his grievance that the pain was "unbearable." Dkt. 94-1, at 7. Because a reasonable jury could draw the inference that the prescribed medication was clearly ineffective, yet defendants took no action to change the pain treatment. So I will deny defendants' motion for summary judgment on this claim.

### d. John and Jane Does

Klotz, Salimes, and Brettingen move for summary judgment dismissing John and Jane Does, who Spangler alleged enforced the lockout policy despite his medical needs. Spangler's deadline to identify the Doe defendants has long passed, so I will dismiss these claims as abandoned.

## C. Motion to appoint counsel

Spangler moves for the appointment of counsel. Dkt. 84. I will consider Spangler's motion to be one requesting assistance in recruiting counsel and I will grant it.

Before assisting in recruiting counsel, this court generally requires a pro se litigant to satisfy two requirements. First, the pro se litigant must show that he has made reasonable attempts to recruit counsel on his own. *See Jackson v. Cty. of McLean*, 953 F.2d 1070, 1072–73 (7th Cir. 1992) ("[T]he district judge must first determine if the indigent has made reasonable efforts to retain counsel and was unsuccessful or that the indigent was effectively precluded from making such efforts"). Second, once the pro se litigant has shown that he made some reasonable attempts to recruit counsel, the court "must examine whether the difficulty of the case—factually and legally—exceeds" his abilities to litigate his claims. *Perez v. Fenoglio*, 792 F.3d 768, 784 (7th Cir. 2015) (internal citation and quotation marks omitted). Assessing the

litigant's abilities is a "practical" inquiry, *Santiago v. Walls*, 599 F.3d 749, 762 (7th Cir. 2010), and no fixed requirement exists, *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc) But courts generally consider the litigant's "literacy, communication skills, educational level, and litigation experience" given the complexities of the case. *Id*. "The question is not whether a lawyer would present the case more effectively than the pro se plaintiff" but whether the pro se litigant can "coherently present [his case] to the judge or jury himself." *Id*.

Here, both requirements are satisfied. Spangler has contacted six attorneys but received no response. Dkt. 84. The complexity of the case also exceeds Spangler's abilities to litigate his claims. For instance, he will likely require a medical expert to assess the propriety of Pittman's and Rose's responses to his complaints of pain. For these reasons, I will attempt to recruit counsel for Spangler. After counsel is located, the court will set a scheduling conference.

**D. Remaining motions**

Spangler has filed what he calls a motion in limine, Dkt. 112, in which he reiterates his request for counsel and raises a number of issues related to access to legal materials and his transport given his physical maladies. The parties have also filed a joint motion to move the trial to the federal courthouse in Eau Claire. Dkt. 102. Given my decision to recruit counsel for Spangler, I will deny these motions without prejudice and allow recruited counsel to re-raise those issues by motion or at the scheduling conference.

ORDER

IT IS ORDERED that:

1. Defendants Ron Cramer, Joel Brettingen, Michael Klotz, and Patricia Salimes's motion for summary judgment, Dkt. 68, is GRANTED IN PART.

2. Defendants Donna Pittman and Stacy Rose's motion for summary judgment, Dkt. 77, is DENIED.

3. Defendants Salimes, Brettingen, and John and Jane Does are DISMISSED from the case.

4. Plaintiff Charles E. Spangler's motion for assistance in recruiting counsel, Dkt. 84, is GRANTED.

5. The parties' joint motion to move the trial to Eau Claire, Dkt. 102, is DENIED without prejudice.

6. Plaintiff's motion in limine, Dkt. 112, is DENIED without prejudice.

Entered July 27, 2018.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge